UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| RICHARD L. KITCHEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:04 CV 21 DDN |
| ) | |
| STUART MILLER, in his individual ) | |
| and official capacities as ) | |
| Sheriff of Audrain County; ) | |
| SGT. SCHLEETER, in his individual ) | |
| and official capacities as Head ) | |
| Jailer of Audrain County Jail; ) | |
| D.W. ANCELL, in his individual ) | |
| and official capacities as ) | |
| Sheriff of Randolph County; ) | |
| ROBERTA (BIRDIE) LINK, in her ) | |
| individual and official ) | |
| capacities as Head Jailer of ) | |
| Randolph County Jail; and ) | |
| UNKNOWN DR. FOX, in his ) | |
| individual capacity, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

This matter is before the court on the motions of defendants Miller and Schleeter for summary judgment (Doc. 46), and of defendants Ancell and Link for summary judgment (Doc. 48). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(c). (Doc. 23.) A hearing was held December 5, 2005.

Plaintiff Richard L. Kitchen[1] brought this action pursuant to 42 U.S.C. § 1983, alleging that defendants Stuart Miller, Unknown Schleeter,[2] D.W. Ancell, and Roberta Link violated his civil rights. (Doc. 1.) Plaintiff is currently an inmate at the Western Missouri

---

[1]The court appreciates the quality representation provided plaintiff by appointed counsel Joy Urbom Taylor.

[2]It is undisputed that defendant Schleeter's name was misspelled as "Slaughter" in the pleadings. The complaint and the defendants' answers are ordered amended by interlineation to substitute "Schleeter" for "Slaughter."

Correctional Center in Cameron, Missouri. At the times relevant to the complaint, plaintiff was a pretrial detainee at the Randolph County Jail and the Audrain County Jail.

**The Pleadings**

Plaintiff alleges he was beaten by another inmate while he was held temporarily in the Audrain County Jail, and that this beating eventually led to his undergoing neurosurgery. Plaintiff alleges in his complaint that defendants Miller and Schleeter were deliberately indifferent to a substantial risk of an inmate assault, and that they negligently supervised staff at the Audrain County Jail. He also alleges that while he was held in the Randolph County Jail, defendants Ancell, Link and Fawks[3] were deliberately indifferent to his medical needs, and Ancell and Link negligently supervised staff at the Randolph County Jail. (Doc. 1 at ¶¶ 55-58.)

Defendants Miller and Schleeter moved for summary judgment (Doc. 46), arguing that plaintiff failed to state a claim for "failure to protect" under the Fourteenth Amendment, since neither defendant knew of the threat of danger or acted with deliberate indifference to those needs. Defendants also argue they are entitled to summary judgment on plaintiff's failure to train or supervise claim, since they cannot be liable under a respondeat superior theory, there were no policies in effect that resulted in constitutional violations, and they did not act with tacit authorization or deliberate indifference. They further argue that they did not act with deliberate indifference to his medical needs, and that they are entitled to qualified immunity.

Defendants Ancell and Link moved for summary judgment (Doc. 48), arguing that they were not deliberately indifferent to plaintiff's medical needs. They also argue that, because plaintiff has not alleged that Ancell denied him medical treatment directly, Ancell is not liable because respondeat superior is not a proper theory of recovery for a § 1983 action, and that Link cannot be liable for the actions of the other guards.

---

[3]Defendant Ian Fawks, M.D., has been dismissed from this suit. (Doc. 28.)

Plaintiff responds that defendants Miller and Schleeter were aware of the danger of an inmate assault, yet failed to take measures to protect him. He further argues that the Audrain County Jail had an unconstitutional custom of not protecting inmates. (Doc. 54.) Plaintiff asserts that his complaints of headaches and blurred vision and requests for medical care were ignored at the Randolph County Jail, and that Link and Ancell were deliberately indifferent to his medical care. (Doc. 56.)

**Statement of Uncontroverted Facts**

Plaintiff is currently incarcerated at the Western Missouri Correctional Center, in Cameron, Missouri. (Doc. 47 Ex. A at ¶ 1.) At all times relevant to this lawsuit, plaintiff was a pretrial detainee at either the Randolph County Jail or the Audrain County Jail.

Plaintiff was held at the Audrain County Jail from July 31 to September 4, 2000. (Id. at ¶¶ 4-5.) Miller is the Sheriff of Audrain County, and Schleeter was a staff sergeant at the time plaintiff was at that facility. At that facility, inmates are segregated into one of four housing pods depending on the severity of pending charges against them. (Id. at ¶¶ 6-7.) Plaintiff was held in the pod designated for violent crime and felony offenders, since he was charged with several violent felonies.

While at the Audrain County Jail, he resided in a pod with two other inmates, Derrick Freese and Willie Craft. (Id. at ¶ 13.) Plaintiff made verbal complaints about Freese to unknown guards that Freese was "bullying" the other inmates and taking their food, and he stated that Freese and another inmate should be split up because the pair were acting in concert to harass other inmates. (Doc. 47 Ex. B at 95; Doc. 54 Attach. 1 at 137, plaintiff's deposition.) Plaintiff never made a formal written complaint about Freese. (Doc. 47 Ex. B at 96.) Plaintiff states he left written complaints, ("kites") in the doors of the pods for the jailers to find, but it is unknown whether anyone

actually found the notes.[4] (Id. at 141.) These kites did not complain about Freese to jail employees. (Id. at 141-42.) Other inmates told plaintiff they complained about Freese. (Doc. 54 Attach. 1 at 145-46.) Plaintiff complained on September 2, 2002 that Craft threatened to kill him in his sleep. (Doc. 47 Exs. A at ¶ 51-52, B at 86.) After the complaint, Craft was moved and plaintiff never saw him again at the Audrain County Jail. (Doc. 47 Ex. B at 92.) He never complained to Schleeter or Miller concerning fights in the jail or that any inmates other than Craft threatened him. (Id. at 128.) Plaintiff never met Miller while at the Audrain County Jail. (Id. at 130-31.)

Some time before August 30, 2000, a fight occurred between Freese and plaintiff in the shower at the Audrain County Jail. (Id. at 112, 155.) Plaintiff did not report this fight to any jail employee. (Id. at 119.)

A second fight occurred in plaintiff's cell on August 30, 2000 while plaintiff was in the cell. (Id. at ¶ 21-22.) The altercation was primarily between Craft and Freese, although plaintiff was knocked out of the way during the fight. (Doc. 47 Ex. B at 101-02.) After this fight, Freese was removed from the pod, because he was the instigator of the fight. (Doc. 47 Ex. A at ¶ 30.)

While at the Audrain County Jail, plaintiff complained of dizziness and headaches after the fight with Freese. (Doc. 47 Ex. B at 147-49.) Plaintiff asked to see a doctor and asked to go to a hospital on September 1, 2000, and he was taken to the Audrain County Medical Center for examination. (Id. at 150.) Plaintiff testified that he was never denied medical care while at the Audrain County Jail. ( Id. at 151.)

On September 4, 2000, plaintiff was transferred back to the Randolph County Jail.[5] (Doc. 49 Attach. 7.) Ancell is the Sheriff of Randolph County, and Link is the jail supervisor. (Doc. 1 at ¶¶ 7-8.)

---

[4]Inmates at the Audrain County Jail would use such "kites" to complain to jailers about other inmates. (Doc. 47 Ex. B at 139-145.) Plaintiff described the "kites" as handwritten, unsigned notes placed where the jailers could find them. (Id. at 140.) Either a jailer or another inmate could find such "kites." (Id. at 141.)

[5]Plaintiff was being held in the Audrain County Jail because the Randolph County Jail was being renovated.

When he arrived, he did not notify anyone of his head injury. (Doc. 49 Attach. 4 at 228, deposition of plaintiff.) He marked "no" on a questionnaire inquiring whether he was experiencing headaches. (Doc. 49 Attach. 2.) He later told jail personnel he was experiencing pain, headaches and blurred vision. (Doc. 49 Attach. 4 at 228.) He did not understand the seriousness of his condition prior to the surgery he had for the injury. (Doc. 49 Attach. 6 at ¶ 5; Attach 7 at 181.) He requested medication for his pain from the jail employees and he received it. (Doc. 49 Attach. 7 at 181-82, 189.) Plaintiff does not remember seeking treatment from defendant Link. (Id. at 212-213.)

On February 9, 2001, plaintiff collapsed and began experiencing seizures. (Doc. 1 at ¶ 41.) He was rushed to the Moberly Medical Center. (Id.) From there, he was sent to a hospital in Columbia, Missouri, where he was immediately operated on. On February 16, 2001, plaintiff underwent brain surgery for a colloidal cyst; the surgery required twenty-four staples. (Doc. 49 Attach. 7 at 193.) Plaintiff was discharged from the hospital February 18, 2001, and the staples were removed on February 26, 2001. Before removal, skin began to grow over the staples, making removal more painful and difficult. Plaintiff never told Ancell about the staples, because he did not see him while he was at the Randolph County Jail. (Id. at 194.) The hospital discharge papers indicated the staples were to be removed in one week. (Doc. 49 at 7.)

## Discussion

### Summary Judgment Standard

When deciding a summary judgment motion, the court must "determine whether the evidence, when viewed in the light most favorable to the non-moving party, and according it the benefit of all reasonable inferences, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." Union Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir. 2004); see Federal Rule of Civil Procedure 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). "A fact is 'material' if it might affect the outcome of the case and a factual dispute is 'genuine' if the

-5-

evidence is such that a reasonable jury could return a verdict for the non-moving party." Scottsdale Ins. Co. v. Tri-State Ins. Co. of Minn., 302 F. Supp. 2d 1100, 1103 (D.N.D. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence of specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004), cert. denied, 2004 WL 2153070 (U.S. Nov. 1, 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

**Failure to Protect**

Defendants Miller and Schleeter argue that they are entitled to summary judgment because plaintiff has not proffered admissible evidence that they failed to protect him. As a pretrial detainee when the alleged constitutional violations occurred, plaintiff's failure to protect claim against Miller and Schleeter is analyzed under the Fourteenth Amendment. Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005); Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003). "Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." Owens, 328 F.3d at 1027 (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)).

> The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments.' U.S. Const. amend. VIII. The Supreme Court has held that the Eighth Amendment requires prison officials to take 'reasonable measures to guarantee the safety of the inmates [and] ... to protect prisoners from violence at the hands of other prisoners.'

Crow, 403 F.3d at 601-02 (quoting Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)). Plaintiff must proffer admissible evidence of specific facts that he was at a risk of serious harm, and that the jail officials knew of the risk but were deliberately indifferent to his safety. Crow, 403 F.3d at 602.

Plaintiff may have been at a risk of serious harm, since he was involved in an altercation with another inmate which resulted in a

-6-

serious head injury.  However, by plaintiff's own deposition testimony, he never complained about threats from Freese to any of the jail officials at the Audrain County Jail.  (Doc. 47 Ex. B at 128.)  At most, guards had notice that Freese was bullying the inmates and taking their food trays.  (Doc. 54 Ex. 2 at 145.)  The altercation between plaintiff and Freese occurred before the altercation between Craft and Freese, so there was no prior violent conduct by Freese that would have put the jail employees on notice that he posed a risk of serious harm to plaintiff.

Further, there is no indication that, even if they knew of the threat of harm that Freese posed, they were deliberately indifferent to it.  On the contrary, after the known fight between Craft and Freese, Freese was removed from the pod.  Further, the jail removed Craft from the pod when plaintiff notified jail employees of the threat made against him.  These facts do not rise to a constitutional level of failure to protect.  Therefore, defendants Miller and Schleeter are entitled to summary judgment on plaintiff's failure to protect claim.

**Deliberate Indifference to Serious Medical Needs**

Defendants Miller, Schleeter, Link, and Ancell further argue that they are entitled to summary judgment on plaintiff's claim that he was denied medical care.  In his complaint, plaintiff alleges that after the fight between himself and Freese, he suffered severe blows to his head, neck, and shoulders, that "[i]t was clear that [he] urgently needed emergency medical treatment" and that he was taken to the Audrain County Medical Center.  In his complaint, he does not state a claim against Miller and Schleeter for denial of medical care.  His claims include a claim for deliberate indifference to a substantial risk of inmate on inmate assault, and failure to supervise the staff.  Therefore, plaintiff has not alleged that Miller or Schleeter denied him medical care.  But even if his allegations can be construed as such, there are no facts that Miller or Schleeter were indifferent to his serious medical needs.  After he requested medical care on September 1, 2000, he was taken to the Audrain Medical Center.  Plaintiff further testified

that he never recalled any jail official at Audrain County Jail denying him any request for medical care. (Doc. 47 Ex. B a 151.)

Plaintiff alleges Link and Ancell were deliberately indifferent to his medical needs. (Doc. 1 at ¶ 57.) To prove a claim for deliberate indifference to serious medical needs, plaintiff must show that the defendant had a serious medical need, that the defendant had actual knowledge of the serious medical need, and then acted with deliberate inaction "amounting to callousness." Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998); Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997); Davis v. Hall, 992 F.2d 151, 152-53 (8th Cir. 1993). Mere negligence or acts that constitute medical malpractice do not rise to the level of a constitutional violation. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); Bellecourt v. United States, 994 F.2d 427, 431 (8th Cir. 1993) (misdiagnosis, care which fell below standard of care in community, and not following patient's suggested treatment does not rise to constitutional indifference to serious medical needs).

Plaintiff must first have alleged facts that his medical condition was "serious," that is, "created an excessive risk to the inmate's health." Dulany, 132 F.3d at 1239. "Federal courts have frequently found that medical needs of prisoners which require surgery constitute serious medical needs . . . ." Starbeck v. Linn County Jail, 871 F. Supp. 1129, 1141 (N.D. Iowa 1994.) Certainly, plaintiff's condition was serious; it resulted in neurosurgery. However, the plaintiff must allege facts that his serious medical needs were known by the defendants, and that despite this knowledge, they failed to act, resulting in deliberate indifference to his medical needs.

Here, there are no facts that defendants knew of plaintiff's serious medical needs. In fact, plaintiff states in his deposition that he never told anyone of his injury for one to two weeks after arriving at the Randolph County Jail, and that he himself was unaware of the seriousness of the situation until after surgery. On his inmate intake sheet he indicated he did not suffer from headaches. Once the serious nature of his condition became apparent, he was rushed immediately to the Moberly Medical Center, then on to the hospital in Columbia, where he underwent surgery. Link gave plaintiff over-the-counter pain

medication for his headaches when requested.  Plaintiff never told Ancell of any medical problems, and does not recall requesting medical treatment from Link.

Plaintiff alleges his staples were left in his head after surgery too long, but this allegation is not supported by the evidence.  The medical records indicate that the staples were removed 10 days after the surgery.  (Doc. 49 at 7.)  Plaintiff never directly told Ancell about any of these problems.  Therefore, Ancell and Link are entitled to summary judgment on plaintiff's claims that they acted with deliberate indifference to his medical care.

### Respondeat Superior

Defendants Miller, Schleeter and Ancell further argue that they cannot be held liable in their individual capacities for any of the claims against them because respondeat superior is not a basis for recovery under § 1983.  (Doc. 47 at 19.)  "A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001); Simmons v. Cook, 154 F.3d 805, 808 (8th Cir. 1998); Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997).  A supervisor may be liable, however, if he "directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." Tlamka, 244 F.3d at 635.  To maintain a claim for failure to train or supervise, the plaintiff must show that the supervisor acted with "deliberate indifference or tacit authorization of the offensive acts." Tilson v. Forrest City Police Dept., 28 F.3d 802, 807 (8th Cir. 1994) (quoting Bolin v. Black, 875 F.2d 1343, 1347 (8th Cir. 1989)).

As determined above, Miller and Schleeter did not directly participate in any alleged failure to protect plaintiff.  Plaintiff asserts he never met Miller while at the Audrain County Jail.  Schleeter further was not aware of any serious risk of harm to plaintiff.  Before the alleged fight between Freese and plaintiff, there had been no previous acts of violence by Freese that would have put Miller or Schleeter on notice of this type of behavior.  Further, neither

defendant was aware a fight ever occurred between Freese and plaintiff, since he never reported it to anyone.

Defendants Miller and Schleeter did not fail to train or supervise their staff nor did they tacitly authorize such acts by other employees. After the reported fight between Craft and Freese, Freese was removed from the pod. After plaintiff complained about threats from Craft, Craft was removed. There is also no evidence they failed to train employees properly. Since neither Miller or Schleeter either directly participated in, or were indifferent to, failing to protect plaintiff or to supervise their subordinates, they cannot be held liable under a respondeat superior theory.

Ancell and Link further cannot be held liable under a respondeat superior liability theory. Ancell was never aware of plaintiff's head injury or the staples in his head. There is no indication any alleged medical indifference was met with tacit authorization, because whenever his medical condition was known to be serious, plaintiff was sent to the hospital. Further, Link, as a jail supervisor, cannot be liable for the actions of other employees, if they did fail to give plaintiff medicine or treatment when he requested it. Plaintiff does not remember asking Link for treatment, and Link gave him medication.

### Qualified Immunity

Defendants Schleeter and Miller further argue that they are entitled to qualified immunity for their actions. (Doc. 47 at 21.) "Qualified immunity shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Whether a defendant is shielded from liability requires a two-part test. First, the court must determine whether the facts, considered in a light most favorable to the plaintiff, show a violation of a constitutional right. Second, the court must determine whether this right was clearly established. Janis v. Biesheuvel, 428 F.2d 795, *2 (8th Cir. 2005); Crow, 403 F.3d at 601.

Plaintiff alleges a violation of his constitutional rights against Schleeter and Miller for failing to protect him and for negligently supervising staff. As stated above, plaintiff has proffered no admissible evidence that either defendant failed to protect him or failed to train or supervise the staff. Since there has been no violation of any constitutional right, both defendants are entitled to qualified immunity.

For all of the above reasons, the motions by Schleeter, Miller, Ancell, and Link for summary judgment are sustained. An order in accordance with this memorandum is issued herewith.

/s/ David D. Noce

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 13, 2005.